UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARTOSKA GILLISPIE, | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:14-CV-257 NAB |
| CINDY GRIFFITH,[1] | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This action is before the Court on Petitioner Artoska Gillispie's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Doc. 1.] Respondent filed a response to the Petition for Writ of Habeas Corpus. [Doc. 6.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 5.] For the reasons set forth below, Gillispie's petition for writ of habeas corpus will be denied.

**I.   Background**

After a jury trial, Gillispie was convicted of first degree robbery and sentenced to twenty-five years.[2] (Resp't Ex. E at 58-60.) The following evidence, in the light most favorable to the verdict, was presented at trial.[3] An individual entered a U.S. Cellular Store, brandished a gun,

---

[1] During the pendency of the Petition, Cindy Griffith became the warden at Potosi Correctional Center where Petitioner is incarcerated. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Cindy Griffith as the Respondent and remove Troy Steele's name.

[2] Gillispie was also convicted of possession of a controlled substance and sentenced to one year, to run concurrently with his sentence on the robbery count. (Resp't Ex. E at 58-60.)

[3] These facts are taken substantially from the Supplemental Memorandum accompanying the Missouri Court of Appeals decision in Gillispie's direct appeal. (Resp't Ex. I.) A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254.

and forced the two employees present to give him $254 from a safe, approximately $1,200 from the registers, four cell phones, and three Bluetooth headsets. The employees gave descriptions of the individual, there was store security surveillance footage of him, and one of the employees identified the individual as Gillispie from a photo. Police sought to locate Gillispie, who had a wanted, by tracking his cell phone. The tracking information placed Gillispie in the area of the U.S. Cellular store approximately fifteen minutes prior to the robbery. Police located Gillispie at a Motel 6 and discovered stolen items from the robbery in the motel room where Gillispie was arrested.

Following his conviction, Gillispie filed a direct appeal. (Resp't Ex. G.) His sole point on appeal was that the trial court erred in failing to intervene *sua sponte* and declare a mistrial or issue a curative instruction when Detective Donald Stepp testified that he noticed Gilispie's height and build were "very similar to the individual that was in the video from U.S. Cellular" and that he "felt that we had the correct individual in custody." The Missouri Court of Appeals affirmed the verdict. (Resp't Ex. I.)

Following his direct appeal, Gillispie filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15. (Resp't Ex. J at 3-16.) Post-conviction counsel filed an amended motion, arguing that appellate counsel had been ineffective in failing to appeal (1) the overruling of Gillispie's *Batson* objection, (2) the denial in part of his motion to suppress evidence seized from the motel room, and (3) the overruling of Gillispie's motion in limine to exclude evidence of his warrants or "wanteds." *Id.* at 20-32. The post-conviction motion court denied the motion without an evidentiary hearing. *Id.* at 45-53. The Court of Appeals affirmed. (Resp't Ex. M.)

Gillispie then filed his Petition for Writ of Habeas Corpus in this court on February 12, 2014. [Doc 1.] The Respondent filed a response in opposition. [Doc 6.] Gillispie filed a reply. [Doc. 14.]

## II. Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the

relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

4

## III. Discussion

In his petition, Gillispie reasserts the claims raised in his direct appeal and his amended post-conviction motion. In Ground 1, Gillispie reasserts his sole point on direct appeal, that the trial court erred in failing to intervene *sua sponte* when Detective Donald Stepp testified as to the ultimate issue of whether Gillispie was in fact the robber depicted in the video. In Grounds 2 through 4, he reasserts the claims raised in his amended post-conviction motion, that appellate counsel was ineffective in failing to appeal (1) the overruling of Gillispie's *Batson* objection, (2) the denial in part of his motion to suppress evidence seized from the motel room where he was arrested, and (3) the overruling of Gillispie's motion in limine to exclude evidence of his warrants or "wanteds." Respondent argues that Ground 1 is procedurally defaulted because the Court of Appeals reviewed it for plain error. Respondent further argues that the Court should defer to the Court of Appeals' rulings denying all four grounds. For the following reasons, Gillispie's petition will be denied.

### A. Trial Court Error (Ground 1)

In Ground 1, Gillispie reasserts his sole point on direct appeal, that the trial court erred in failing to intervene *sua sponte* and declare a mistrial or issue a curative instruction when Detective Donald Stepp testified that he noticed Gilispie's height and build were "very similar to the individual that was in the video from U.S. Cellular" and that he "felt that we had the correct individual in custody." Gillispie conceded that the point was not preserved at trial and the Court of Appeals reviewed it for plain error. Respondent argues, and the Court agrees, that Ground 1 is procedurally defaulted. In *Clark v. Bertsch*, the Eighth Circuit held based on *Hayes v. Lockhart* that a "state court's discretionary plain-error review of [a petitioner's] unpreserved claims cannot excuse his procedural default," resolving an intra-circuit panel split on the issue. 780 F.3d 873,

5

877 (8th Cir. 2015). Therefore, Gillispie's claim is procedurally defaulted. Gillispie has not demonstrated adequate cause to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Even if the Court were able to reach the merits of Gillispie's claim, Gillispie would not be entitled to relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Where a petitioner raises the improper admission of testimony at trial, "[w]e grant habeas relief … only if the alleged error was so conspicuously bad that it fatally infected the trial and rendered it fundamentally unfair." *Gee v. Groose*, 110 F.3d 1346, 1350 (8th Cir. 1997) (internal quotations omitted). "In assessing whether this burden has been met, the following are of particular importance: the frequency and pervasiveness of the alleged misconduct in the context of the entire trial; the weight of the evidence supporting guilt; and whether the trial judge gave a cautionary instruction to the jury." *Id.* (internal quotations omitted). "[T]he petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir.1995).

The Court of Appeals found that the admission of Detective Stepp's testimony as to the ultimate issue of whether Gillispie was in fact the robber depicted in the video improperly invaded the province of the jury. (Resp't Ex. G at 6.) However, the court found that there was no prejudice to Gillispie because of the "overwhelming evidence" linking Gillispie to the robbery, including the surveillance video, the two employees' identification of Gillispie at trial, and the

fact that police discovered stolen items in the motel room where Gillispie was arrested. *Id*. The Court of Appeals' conclusion that the error was harmless is entitled to deference and was neither incorrect nor unreasonable. Gillispie has not shown that there is a reasonable probability that, but for the improper admission of Detective Stepp's testimony, the outcome of his trial would have been different. *See Gee*, 110 F.3d at 1350 (denying habeas relief for "single, arguably cumulative statement" connecting petitioner to vehicle used in robberies, noting that while the trial court failed to give a cautionary instruction, the weight of the other evidence strongly linked petitioner to the vehicle and supported a finding of guilt). Ground 1 is denied.

### B. Ineffective Assistance of Appellate Counsel (Grounds 2 through 4)

Next, the Court will address Gillispie's ineffective assistance of counsel claims. "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." *Id*. To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88. "It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal." *Cole v. Dormire*, 2011 WL 1258249, at *14 (E.D. Mo. Jan. 20, 2011) (citing *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985); *Douglas v. California,* 372 U.S. 353, 357–58 (1963)). "The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in *Strickland*." *Id.* (citations omitted).

7

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* In making this determination, the court should recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. It is unnecessary, therefore, to prove that counsel's performance fell below an objective standard of reasonableness before determining the presence or absence of resulting prejudice.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the [appeal], focusing on whether it is reasonably likely that the result would have been different absent the errors."

*Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)). "To satisfy Strickland, the likelihood of a different result must be substantial not just conceivable." *Id*. Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id*. Therefore, "[s]o long as the state court's decision was not "contrary to" clearly established federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington*, 562 U.S. 86 at 101). This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

In Grounds 2 through 4, Gillispie reasserts the claims raised in his amended post-conviction motion, that appellate counsel was ineffective in failing to appeal (1) the overruling of Gillispie's *Batson* objection, (2) the denial in part of his motion to suppress evidence seized from the motel room where Gillispie was arrested, and (3) the overruling of Gillispie's motion in limine to exclude evidence of his warrants or "wanteds." The Court will address each claim in turn.

    **i.**     *Batson* **Objection (Ground 2)**

Under Missouri law, a *Batson* objection consists of three steps:

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike.[6] *See Batson,* 476 U.S. at 98 n. 20, 106 S.Ct. at 1724 n. 20; *State v. Jackson,* 809 S.W.2d 77, 81 (Mo.App.1991). Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated. *See Antwine,* 743 S.W.2d at 64; *Jones v. Jones,* 938 F.2d at 844.

*State v. Parker*, 836 S.W.2d 930, 939 (Mo. 1992). Here, trial counsel objected to the prosecutor's use of a peremptory strike to strike the only remaining African American member of the venire panel, Juror No. 18. (Resp't Ex. B at 74.) In response, the prosecutor stated that he struck Juror No. 18 because he was concerned that she had not been paying attention and because she admitted to having pled guilty to a crime. *Id*. When asked by the trial court whether she had any prior arrests, charges or convictions, Juror No. 18 disclosed that she had been arrested for not paying traffic-related fines and had pled guilty to passing a bad check in 2001 or 2002, and that her license was currently suspended. *Id.* at 66-68. She stated that she had not heard the question when asked by the prosecutor. *Id.* at 66.

The trial court felt that Juror No. 18 had been less than forthcoming about her conviction and suspended license and noted that the prosecutor struck two similarly situated non-African American male panel members who admitted they had been charged with crimes. *Id.* at 75-76. The court found that the state had met its burden of proffering a race-neutral reason for the strike. *Id*. Trial counsel then objected on the grounds that Juror No. 18 had been honest and was able to get to court despite her suspended license. *Id*. Counsel did not object on the grounds that the prosecutor's proffered reasons were pretextual. Appellate counsel did not appeal the trial court's overruling of Gillispie's *Batson* objection.

Both the post-conviction motion court and the Court of Appeals denied Gillispie's claim that appellate counsel was ineffective in failing to appeal the overruling of the *Batson* objection, reasoning that Missouri appellate courts have refused to review the argument that a strike was pretextual when it is raised for the first time on appeal. (Resp't Ex. M at 5; Resp't Ex. J at 49.) The Court of Appeals found that even if the argument had been preserved, Gillispie would not have prevailed. (Resp't Ex. M at 6.) "Appellate counsel is expected to winnow the issues on

appeal to highlight the most meritorious issues and eliminate the sure losers." *Cole*, 2011 WL 1258249, at *14 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Gee*, 110 F.3d at 1352; *Pollard v. Delo*, 28 F.3d 887, 889 (8th Cir. 1994)). "An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel." *McCord v. Norman*, 2012 WL 1080925, at *16 (E.D. Mo. Mar. 30, 2012) (citations omitted). Thus, "[i]f an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that issue on appeal." *Cole*, 2011 WL 1258249, at *14 (citations omitted). Appellate counsel's decision not to appeal an unpreserved claim that the Court of Appeals determined would have failed even if it had been preserved does not constitute ineffective assistance of counsel. The decision of the state courts on this issue is entitled to deference and was neither incorrect nor unreasonable. Ground 2 is denied.

### ii. Motion to Suppress (Ground 3)

Gillispie filed a motion to suppress evidence seized from the motel room where he was arrested, arguing that the warrantless search and seizure were unlawful. (Resp't Ex. E at 11-12.) Under the plain view doctrine, when an officer is "lawfully located in a place from which the object can be plainly seen" and "its incriminating character [is] 'immediately apparent,'" law enforcement may lawfully seize the object without a warrant. *Horton v. California*, 496 U.S. 128, 136–37, 110 S. Ct. 2301, 2308, 110 L. Ed. 2d 112 (1990) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S. Ct. 2022, 2038, 29 L. Ed. 2d 564 (1971)). There was no dispute that law enforcement had a right to enter the motel room to arrest Gillispie on outstanding warrants from other jurisdictions. (Resp't Ex. E at 14.) Testimony at the suppression hearing established that Gillispie was a suspect in a rash of robberies of cellular phone stores in

St. Louis County, had warrants out for his arrest, was wanted for a robbery involving a shooting at a Florissant convenience store, and had a felony warrant for child support. (Resp't Ex. A at 2, 4-5, 11-12.)

Gillispie argued that, with the exception of marijuana seized from the motel room, the other items were not apparently incriminating and therefore the plain view doctrine did not apply. (Resp't Ex. E at 14.) At the suppression hearing, Detective Stepp testified that he had viewed the surveillance video and was aware that the suspect had left with an orange AT&T bag full of cell phones and Bluetooths, along with some U.S. currency. (Resp't Ex. A at 6.) He testified that when he entered the motel room, he could see the entire room except the toilet area of the bathroom and that he recognized the AT&T bag, saw some phones in it, saw a wad of currency on the nightstand, and recognized the suspect's clothing, including a Fila jacket. *Id.* at 8-10, 19, 22-23.

The crime scene technician who processed the seized evidence, Officer Robert O'Neal, confirmed that the AT&T bag, currency, and Fila jacket were in plain view, and testified that the cell phones could be seen through the AT&T bag and that he discovered additional currency inside the Fila jacket. *Id.* at 28-35. Officer O'Neal further testified as to various electronics and personal items in plain view. *Id.* He described a black and white paper bag with the words "Man of Fashion" on it that contained three cell phones, a pair of boots, and the ID, social security card, and birth certificate of a Mr. Henderson, as well as a separate bag that contained seventeen pairs of white socks. *Id.* Finally, Officer O'Neal testified that a pellet gun and air cartridge were found under a mattress in the motel room. *Id.* at 34. The trial court suppressed the weapon and ammunition, but denied Gillispie's motion in all other respects. (Resp't Ex. E at 21.)

At trial, when the state introduced evidence seized from the motel room and photos of the evidence, trial counsel affirmatively stated that she had no objection. (Resp't Ex. B at 175-80; Resp't Ex. C at 219-45.) Appellate counsel did not appeal the trial court's denial in part of Gillispie's motion to suppress.

Both the post-conviction motion court and the Court of Appeals denied Gillispie's claim that appellate counsel was ineffective in failing to appeal the denial in part of his motion to suppress, finding that the evidence was lawfully seized because it was in plain view of law enforcement. (Resp't Ex. M at 7-8; Resp't Ex. J at 49-50.) The Court of Appeals further found that the claim was effectively waived because trial counsel announced no objection to admission of the evidence at trial. (Resp't Ex. M at 7.)

This Court disagrees with the conclusion that, with the exception of the weapon and ammunition, all of the evidence was in plain view. There was no evidence presented at the suppression hearing to suggest that the Man of Fashion bag or the bag containing the socks were apparently incriminating. In addition, while the bags themselves were in plain view, there was no evidence presented that their contents were in plain view. Indeed, the evidence presented at trial established that the ID, social security card, and birth certificate for a Mr. Henderson in the Man of Fashion bag were found at the bottom of the bag and that law enforcement had to open the bag containing the socks in order to retrieve its contents. (Resp't Ex. C at 233, 240.)

Nevertheless, the issue before this Court is not whether the evidence should have been suppressed, but whether appellate counsel was ineffective in failing to appeal the denial in part of Gillispie's motion to suppress and, more precisely, whether the decision of the state courts in that regard was incorrect or unreasonable. The Court of Appeals found that the point "merit[ed] little discussion" given that trial counsel announced no objection to admission of the evidence at trial

13

and "[a] defendant may not take advantage of self-invited error." (Resp't Ex. M at 7.) This Court notes that counsel specifically announced no objection to the admission of photos of the contents of the Man of Fashion bag and the bag containing the socks. (Resp't Ex. C at 233-40.) Therefore, as the Court of Appeals held, the claim was waived. As set forth above, appellate counsel is not required to raise non-meritorious claims. The decision of the state courts on this issue is entitled to deference and was neither incorrect nor unreasonable. Ground 3 is denied.

### iii. Motion in Limine to Exclude Warrants or Wanteds (Ground 4)

Gillispie filed a motion in limine to exclude evidence of warrants or "wanteds" for other crimes and/or jurisdictions as prior bad act evidence. (Resp't Ex. E at 22.) The trial court overruled the motion on the grounds that the state could introduce such evidence to provide a narrative about the circumstances of Gillispie's arrest. (Resp't Ex. B at 2.) The prosecutor stated that he would "obviously" "stay away from what they are for." *Id.* At trial, Detective Stepp testified that Gillispie was arrested because "[h]e had felony warrants and wanteds." *Id.* at 173. Trial counsel did not object to the testimony. *Id.* There was no mention at trial of the basis for the warrants and wanteds. Appellate counsel did not appeal the overruling of Gillispie's motion in limine.

Both the post-conviction motion court and the Court of Appeals denied Gillispie's claim that appellate counsel was ineffective in failing to appeal the overruling of his motion in limine. (Resp't Ex. M at 9-11; Resp't Ex. J at 51.) The post-conviction motion court found that admission of the testimony was proper in accordance with *State v. Campbell*, 147 S.W.3d 195, 206 (Mo. Ct. App. 2004) and *State v. Sanders*, 761 S.W.2d 191, 192 (Mo. Ct. App. 1988). (Resp't Ex. J at 51.) The Court of Appeals found that, because trial counsel did not object to the testimony, the claim was not preserved and would therefore have been subject to discretionary

plain error review. (Resp't Ex. M at 9.) The court further found that it would have declined to exercise such review because it agreed with the post-conviction motion court that the testimony was admissible under *Campbell* and *Sanders*. *Id.* at 10-11. As set forth above, appellate counsel is not required to raise non-meritorious claims. Appellate counsel's decision not to appeal an unpreserved claim that the Court of Appeals determined it would have declined to review does not constitute ineffective assistance of counsel. The decision of the state courts on this issue is entitled to deference and was neither incorrect nor unreasonable. Ground 4 is denied.

**IV.     Conclusion**

Based on the foregoing, the Court finds that Gillispie's request for relief pursuant to 28 U.S.C. § 2254 should be denied. Further, because Gillispie has made no showing of denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.  [Doc. 1.]

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Artoska Gillispie for a Certificate of Appealability will be **DENIED**.

Dated this <u>29th</u> day of March, 2017.

        /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE